## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

-------------------------------------------------------

TINA CHEEK                 :
133 North Ct.              :      CIVIL ACTION NO.: _____
Milton, PA 17847       :
                             :      JURY TRIAL DEMANDED
                 Plaintiff,   :
       v.                       :
                             :
DOLGENCORP, LLC d/b/a DOLLAR   :
GENERAL                  :
325 Point Township Drive     :
Northumberland, PA 17857    :
                             :
                 Defendant.  :

-------------------------------------------------------

## CIVIL ACTION COMPLAINT

Plaintiff, Tina Cheek ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant Dolgencorp, LLC d/b/a Dollar General ("Defendant"), alleges as follows:

## INTRODUCTION

1.     Plaintiff initiates this action contending that Defendant violated her rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

2.     In relevant part, Plaintiff contends that Defendant subjected her to sexual harassment of a severe and pervasive nature, resulting in a hostile and

offensive work environment because of sex in violation of Title VII and the

PHRA, and constructively discharged her from employment because of her sex and

in retaliation for her complaints of discrimination.

## PARTIES

3.     Plaintiff Tina Cheek is a citizen of the United States and Pennsylvania

and currently maintains a residence at 133 North Ct., Milton, PA 17847.

4.     Upon information and belief, Defendant Dolgencorp, LLC d/b/a

Dollar General is a limited liability company organized and existing under the laws

of the Commonwealth of Pennsylvania with an address registered with the

Pennsylvania Secretary of State of 100 Mission Ridge, Goodlettsville, TN 37072,

and a business location at 325 Point Township Drive, Northumberland, PA 17857,

at which Plaintiff was employed.

## JURISDICTION AND VENUE

5.     Paragraphs 1 through 4 are hereby incorporated by reference as

though the same were fully set forth at length herein.

6.     On or about October 7, 2020, Plaintiff filed a charge of discrimination

with the United States Equal Employment Opportunity Commission ("EEOC"),

which was dually filed with the Pennsylvania Human Relations Commission

("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e).

Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2021-00118.

Plaintiff's EEOC was filed within one hundred and eighty (180) days of the unlawful employment practices alleged herein.

7.      By correspondence dated July 28, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Rights, advising her that she had ninety (90) days to file suit against Defendant.

8.      On October 25, 2021, within the statutory timeframe applicable to her complaint, Plaintiff filed the instant action.

9.      Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

10.      This action is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1, *et seq.*

11.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12.      This Court has pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as those claims arise from the same common nucleus of operative fact as her federal claims.

13.      The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant resides in this judicial district, doing business therein, and the events giving rise to this action occurred in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

14.    Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15.    Plaintiff began her employment with Defendant in or around February 2020 in the position of Cashier and transitioned into a Lead Sales Associate position shortly thereafter.

16.    At all times material hereto, Plaintiff performed her job well, receiving occasional praise and no justifiable discipline.

17.    On or around March 2020, Plaintiff was transferred to the Dollar General store in Northumberland, Pennsylvania.

18.    Shortly thereafter, Defendant's Assistant Store Manager, Christopher Martin ("Mr. Martin"), began subjecting Plaintiff to unwanted sexual harassment.

19.    For example, in or around April 2020, Mr. Martin followed Plaintiff into the bathroom and, while she was cleaning, he blocked the door stating, "You're not getting out of this bathroom unless you have sex with me."

20.    Mr. Martin then tried to pull down Plaintiff's leggings so Plaintiff swung a mop at him.

21.    Mr. Martin then threatened her by stating, "You better not tell anybody or I'll make sure you're not able to talk ever again."

22.     Additionally, Mr. Martin made comments to her such as asking about the color of Plaintiff's panties, whether Plaintiff was wearing any, telling her Plaintiff had nice cleavage and that Plaintiff should not bend over a certain way, as well as asking her if Plaintiff would like an orgasm after work.

23.     On or about June 24, 2020, Plaintiff reported these incidents to Defendant's Store Manager, Lynette Dozier ("Ms. Dozier"), first by text message and then filled out a complaint in the store.

24.     Upon information and belief, Mr. Martin was engaging in similar sexual harassment behavior towards three (3) other employees and at least one (1) of these employees also reported the sexual harassment to Ms. Dozier.

25.     Upon information and belief, despite telling Plaintiff she agreed that Mr. Martin's actions were "not cool" and that she'd have to "move this forward" with respect to advancing Plaintiff's complaint of sexual harassment, Ms. Dozier failed to do for nearly a month when she finally contacted Defendant's District Manager, Rebecca White ("Ms. White"), on or around July 19, 2020, to discuss Plaintiff's allegations against Mr. Martin.

26.     In the meantime, Ms. Dozier began writing up Plaintiff for reasons which Plaintiff contends are pretextual.

27.   Plaintiff was forced to continue working with Mr. Martin and endure his harassment for approximately one (1) month after she filed her harassment complaint with Ms. Dozier.

28.   Subsequently, in or around late July 2020, Mr. Martin and Plaintiff were moved to different shifts but where they would still have to cross paths when one shift ends and the other begins.

29.   On or about July 23, 2020, Mr. Martin saw Plaintiff and her son in the store and followed them the entire time they were there.

30.   Mr. Martin stayed one aisle over from them and listened to their conversations.

31.   Then, on or about July 28, 2020, Plaintiff received a phone call from Mr. Martin's girlfriend, Jamie Gledhill ("Ms. Gledhill"), who stated she was locked in the bathroom hiding from Mr. Martin after he had hit her.

32.   Plaintiff heard Mr. Martin in the background yelling that he was going to kill her and Ms. Gledhill.

33.   Mr. Martin then kicked the bathroom door in and said, "If you don't quit talking to that bitch, you'll both end up in the same spot in the ground where nobody will find you."

34.   Subsequently, Plaintiff reported this incident to Ms. Dozier who laughed and brushed it off.

6

35.    Plaintiff then emailed Defendant's Regional Manager to report the incident and it was passed along to Ms. White.

36.    Ms. White called her the next day to inform her that "we haven't forgotten about it" and "we're pushing it up the corporate ladder. It just takes a while."

37.    Despite these "assurances," Mr. Martin continued to threaten and attempt to intimidate Plaintiff with impunity.

38.    By way of example, on August 5, 2020, Mr. Martin arrived at the store shortly before Plaintiff's shift ended and clocked in right behind her.

39.    Ms. Dozier's response was to tell her that Mr. Martin and Plaintiff "just have to suck it up and deal with it."

40.    The following day, Mr. Martin arrived at the store at 2 pm, despite the fact that Plaintiff's shift was scheduled to end at 2:30 pm.

41.    Again, Plaintiff was forced to clock out early due to Mr. Martin's menacing intrusion in the workplace.

42.    On August 9, 2020, while Plaintiff was closing the store with Ms. Dozier, Mr. Martin showed up while Plaintiff was bringing carts back inside.

43.    To avoid him, Plaintiff stopped working and walked directly back to the office where Ms. Dozier was standing.

44.    Mr. Martin followed Plaintiff, handed Ms. Dozier a key, and stood there with a smile on his face.

45.    Mr. Martin did this despite having been instructed not to show up at work unless Plaintiff was not there or to call Ms. Dozier to come outside if he needed something.

46.    As a result of this sexual harassment, retaliation, threats, and the lack of remedial action by Defendant, Plaintiff's work hours were reduced to approximately 20 hours per week from approximately 36 hours to avoid interaction with Mr. Martin.

47.    Eventually, due to the deleterious effects of this ongoing hostile work environment on Plaintiff's health and pre-existing medical ailments, Plaintiff was forced to go out on a medical leave of absence in or around late August 2020.

48.    Plaintiff contends that she was constructively discharged from employment.

49.    It is Plaintiff's understanding that she has since been replaced in her position by Defendant.

50.    It is believed and therefore averred that Defendant subjected Plaintiff to and/or permitted a hostile work environment because of her sex, subjected her to and/or allowed sexual harassment against her, retaliated against her for engaging in

protected activity, and constructively discharged her from employment in violation of Title VII and the PHRA.

51.     Defendant failed to take prompt remedial action to address the aforementioned sexual harassment reported by Plaintiff.

52.     As a result of the sexually hostile work environment and retaliation to which Plaintiff was subjected, Plaintiff has suffered damages in the form of, *inter alia*, emotional distress, humiliation, and anxiety, as well as loss of employment.

53.     Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

54.     Plaintiff has, because of her constructive discharge from employment, struggled to obtain other employment and has been and will be forced to expend significant out of pocket expenses on health care.

55.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e, *et seq.***

9

## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RETALIATION

56.     Paragraphs 1 through 55 are hereby incorporated by reference as though the same were fully set forth at length herein.

57.     Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

58.     Plaintiff is a woman and is therefore a member of a protected class under Title VII.

59.     Defendant permitted and/or allowed to exist a hostile work environment because of sex as described above.

60.     Plaintiff's internal complaints to Defendant regarding sexual harassment/sex discrimination constituted protected activity within the meaning of Title VII.

61.     Plaintiff was retaliated against for engaging in protected activity under Title VII as described above.

62.     The sexually and retaliatory hostile work environment to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance, ultimately leading to her constructive discharge from employment.

63.     Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

64.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages and front pay, in an amount to be determined at trial, but no less than $150,000;

b)     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c)     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)     Pre-judgment interest in an appropriate amount; and

e)     Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*

11

## SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RETALIATION

65.     Paragraphs 1 through 64 are hereby incorporated by reference as though the same were fully set forth at length herein.

66.     The conduct described herein and above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, in that Defendant unlawfully and illegally discriminated against Plaintiff because of her sex.

67.     Plaintiff is therefore afforded the opportunity to seek any and all remedies available under the PHRA, 43 P.S. § 951, *et seq.*

68.     Because of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered damages in the form of, inter alia, loss of past and future wages and compensation, personal humiliation, emotional distress, embarrassment, loss of employment, promotion benefits, earnings and earnings potential, and loss of other significant economic benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

a)     Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than $150,000;

b)     Compensatory damages in an amount to be determined at trial;

c)      Plaintiff's costs, disbursements, and attorney's fees incurred in

prosecuting this action;

d)      Pre-judgment interest in an appropriate amount; and

e)      Such other and further relief as the Court deems just and equitable

under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.


Respectfully submitted,


**MURPHY LAW GROUP, LLC**


By:    /s/ Michael Groh
       Michael Murphy, Esq.
       PA Attorney I.D. No. 91262
       Michael Groh, Esq.
       PA Attorney I.D. No 319296
       Eight Penn Center, Suite 2000
       1628 John F. Kennedy Blvd.
       Philadelphia, PA 19103
       TEL: 267-273-1054
       FAX: 215-525-0210
       murphy@phillyemploymentlawyer.com
       mgroh@phillyemploymentlawyer.com
       Attorneys for Plaintiff

Dated: October 25, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.